# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 22-238** |
| **TERENCE WILSON**<br>**TRAVIS ENCLADE** | **SECTION "O"** |

## ORDER AND REASONS

Before the Court is Defendant Terence Wilson's motion[1] to dismiss count three of the superseding indictment. Count three charges Wilson with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).[2] Invoking *New York Rifle and Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), Wilson contends that the Court should dismiss count three because Section 922(g)(1) violates the Second Amendment both facially and as applied to him. But Wilson's facial challenge is foreclosed by *United States v. Diaz*, No. 23-50452, — F. 4th —, 2024 WL 4223684, at *9 (5th Cir. Sept. 18, 2024). And Wilson's as-applied challenge fails because the government has met its burden to show that applying Section 922(g)(1) to Wilson "is consistent with this Nation's historical tradition of firearm regulation." *Id.* (citing *Bruen*, 597 U.S. at 17). Accordingly, for these reasons and those that follow, Wilson's motion to dismiss count three of the superseding indictment is **DENIED**.[3]

---

[1] ECF No. 87.

[2] ECF No. 100 at 2–3.

[3] Wilson elected to file his motion to dismiss exactly one week before a trial setting—the ninth in this case—established about two-and-a-half months earlier. *See* ECF No. 76.

## I.      BACKGROUND

Count three of the superseding indictment charges Wilson with violating Sections 922(g)(1) and 924(a)(8) by possessing two multicaliber pistols after being convicted of four crimes punishable by imprisonment for at least one year.[4]  They are:

**1.      Possession of a firearm or weapon by a felon**. For Wilson's first predicate, the superseding indictment alleges that Wilson was convicted in May 2013 of possessing a firearm or weapon by a felon under Section 14:95.1 of the Louisiana Revised Statutes.[5] At the time of Wilson's conviction, a Section 14:95.1 conviction carried a minimum penalty of 10 years imprisonment and a maximum penalty of 20 years imprisonment. LA. STAT. ANN. § 14:95.1(B) (eff. Aug. 15 2010–July 31, 2017).

**2.      Possession of heroin.** For Wilson's second predicate, the superseding indictment alleges that Wilson was convicted in May 2013 of possessing heroin under Section 40:966(D) of the Louisiana Revised Statutes.[6] The superseding indictment does not allege the quantity of heroin Wilson was convicted of possessing.[7] At the time of Wilson's conviction, the precise term of imprisonment for a Section 40:966(D) conviction depended on the quantity of drugs possessed: a minimum of five years and a maximum of 30 years for 28–200 grams; a minimum of 10 years and a maximum of 30 years for 200–400 grams; and a minimum of 15 years and a maximum of 30 years for 400 or more grams. LA. STAT. ANN. 40:966(D) (eff. Aug. 15, 2010–May 29, 2014).

---

[4] ECF No. 100 at 2–3.
[5] *Id.* at 2.
[6] *Id.*
[7] *Id.*

**3.  Illegal possession of stolen firearms.** For Wilson's third predicate, the superseding indictment alleges that Wilson was convicted in May 2013 for illegally possessing stolen firearms under Section 14:69.1(B)(1) of the Louisiana Revised Statutes.[8] At the time of Wilson's conviction, a Section 14:69.1(B)(1) conviction carried a one-year minimum term of imprisonment and a five-year maximum term of imprisonment. LA. STAT. ANN. § 14:69.1(B)(1) (eff. June 15, 2001–July 31, 2014).

**4.  Possession with intent to distribute heroin.** For Wilson's fourth and final predicate conviction, the superseding indictment alleges that Wilson was convicted in May 2018 of possessing with intent to distribute heroin under Section 40:966(A) of the Louisiana Revised Statutes.[9] At the time of Wilson's conviction, a Section 40:966(A) conviction involving "the narcotic drug heroin" carried a five-year minimum term of imprisonment and a 40-year maximum term of imprisonment. LA. STAT. ANN. § 40:966(B)(3) (eff. Aug. 1, 2017–July 31, 2018).

One week before trial, Wilson moved to dismiss count three under Federal Rule of Criminal Procedure 12(b)(1).[10] He contends that Section 922(g)(1) violates the Second Amendment both facially and as applied to him.[11] The government opposes.[12]

---

[8] *Id.* at 2–3.

[9] *Id.* at 3.

[10] ECF No. 87.

[11] *Id.* at 1; *see also* ECF No. 87-1 at 1–5.

[12] ECF No. 89.

## II.   LEGAL STANDARD

"A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." FED. R. CRIM. P. 12(b)(1). Among other defenses, objections or requests available under Federal Rule of Criminal Procedure 12(b), a party may move to dismiss an indictment based on "a defect in the indictment," including "failure to state an offense." FED. R. CRIM. P. 12(b)(3)(B)(v). The Court may resolve a motion to dismiss an indictment before trial where, as here, the motion presents a question of law. *See United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011) (internal quotation marks and citation omitted).

## III.   ANALYSIS

Wilson contends that the Court should dismiss count three of the superseding indictment because Section 922(g)(1) is unconstitutional both facially and as applied to him.[13] The Court (A) sets out the relevant Second Amendment law before turning to consider Wilson's (B) facial and (C) as-applied challenges to Section 922(g)(1).

### A.   Governing Second Amendment Law

The Second Amendment states that "[a] well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed." U.S. CONST. amend. II. In *District of Columbia v. Heller*, the Supreme Court interpreted this language to protect "the right of law-abiding, responsible citizens to use arms in defense of heath and home." 554 U.S. 570, 635

---

[13] ECF No. 87-1 at 1–5.

(2008). But *Heller* also made clear that the Second Amendment right is not unlimited; it is not a right to "keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626. And *Heller* itself explains that it should not be read to "cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill," which are "presumptively lawful." *Id.* at 626–27 & n.26.

The Supreme Court's 2022 *Bruen* opinion "revised and refined" *Heller. Diaz*, 2024 WL 4223684, at *3. Besides "extend[ing] *Heller*'s protection for carrying handguns in the home to carrying them publicly," *id.* (citing *Bruen*, 597 U.S. at 8–9), *Bruen* clarified the analytical framework governing Second Amendment challenges like the one Wilson brings here, *see Bruen* 597 U.S. at 19–24. Under *Bruen*, courts first consider whether "the Second Amendment's plain text covers an individual's conduct." *Id.* at 24. If it does, then "the Constitution presumptively protects that conduct," and the government then bears the burden to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* Only if the government carries that burden "may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)).

In June of this year, in *Rahimi*, an eight-justice majority applied *Bruen* to hold Section 922(g)(8) constitutional.[14] *United States v. Rahimi*, 144 S. Ct. 1889, 1903 (2024). The Court held that Section 922(g)(8) "fits comfortably" in the Nation's tradition of "preventing individuals who threaten physical harm to others from misusing firearms." *Id.* at 1897.

In so holding, *Rahimi* relied on surety laws and "going armed" laws as appropriate historical analogues to Section 922(g)(8). *Id.* at 1899–1900. Surety laws required individuals to post bonds when there was a "probable ground to suspect of future misbehavior"; they aimed to "prevent all forms of violence, including spousal abuse" and the misuse of firearms. *Id.* (internal quotation marks and citation omitted). So-called "going armed" laws prohibited "riding or going armed, with dangerous or unusual weapons, to terrify the good people of the land." *Id.* at 1901 (internal quotation marks, citation, and brackets omitted). Such conduct justified permanent disarmament because it "disrupted the public order and led almost necessarily to actual violence[.]" *Id.* (internal quotation marks and citation omitted).

*Rahimi* explained that surety laws and "going armed" laws were appropriate analogues to Section 922(g)(8) for several reasons. First, like Section 922(g)(8), surety and "going armed" laws were used "to mitigate demonstrated threats of physical violence." *Id.* Second, the Court reasoned that Section 922(g)(8)'s burden on the

---

[14] Section 922(g)(8) prohibits an individual subject to a domestic violence restraining order from possessing a firearm if that order includes a finding that he "represents a credible threat to the physical safety of [an] intimate partner," or a child of the partner or individual. 18 U.S.C. § 922(g)(8).

Second Amendment right is comparable to the burdens imposed by surety and "going armed" laws because those laws did not "broadly restrict arms use by the public generally." *Id.* at 1902. Finally, the Court explained that violating surety and "going armed" laws could result in imprisonment, and that "if imprisonment was permissible to respond to the use of guns to threaten the physical safety of others, then the lesser restriction of temporary disarmament that Section 922(g)(8) imposes is also permissible." *Id.* Based on these analogues, the Supreme Court ultimately held that Section 922(g)(8) did not violate the Second Amendment facially or as applied to Rahimi because "[o]ur tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others." *Id.*

Having set out the relevant Second Amendment law, the Court turns to apply it to Wilson's facial and as-applied challenges to Section 922(g)(1).

**B.     Section 922(g)(1) is Facially Constitutional.**

Wilson first contends that Section 922(g)(1) is facially unconstitutional.[15] A facial challenge "is the 'most difficult challenge to mount successfully,' because it requires a defendant to 'establish that no set of circumstances exists under which the Act would be valid.'" *Rahimi*, 144 S. Ct. 1898 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). That means Wilson "must establish that no set of circumstances exists under which" Section 922(g)(1) "would be valid." *Salerno*, 481, 749. That he cannot do. The Fifth Circuit recently held that Section 922(g)(1) is constitutional as

---

[15] ECF No. 87-1 at 4.

applied to a defendant with predicate convictions for car theft, evading arrest, and possessing a firearm as a felon. *Diaz*, 2024 WL 4223684, at \*9. Because the Fifth Circuit has held that Section 922(g)(1) is constitutional in at least one application, Wilson cannot show "that no set of circumstances exists under which [Section 922(g)(1)] would be valid." *Salerno*, 481 U.S. at 749. His facial challenge thus fails.

## C. Section 922(g)(1) is Constitutional as Applied to Wilson.

Wilson next contends that Section 922(g)(1) is unconstitutional as applied to him.[16] He says he is among "the people" protected by the Second Amendment and that the conduct for which he is being charged is covered by the plain text of the Second Amendment.[17] As a result, Wilson reasons, the government bears the burden under *Bruen* to show that applying Section 922(g)(1) to him "is consistent with the Nation's historical tradition of firearm regulation."[18] The government, for its part, does not dispute the allocation of burdens under *Bruen*. The government's principal rejoinder is instead that it has carried its burden under *Bruen* to show that Section 922(g)(1) is constitutional as applied to Wilson.[19] The government contends that Wilson's predicate drug-and-gun convictions are analogous to founding-era capital crimes, so disarming Wilson is consistent with the Nation's "history and tradition."[20]

---

[16] ECF No. 87-1 at 4.
[17] *Id.* at 3.
[18] *Id.* at 4–5.
[19] ECF No. 89 at 6.
[20] *Id.* (internal quotation marks omitted).

8

*Bruen* requires the Court to first decide if "the Second Amendment's plain text covers" Wilson's conduct. *Bruen*, 597 U.S. at 24. It does. "The plain text of the Second Amendment covers the conduct prohibited by § 922(g)(1)[.]" *Diaz*, 2024 WL 4223684, at *5. "The burden thus shifts to the government to demonstrate that regulating [Wilson's] possession of a firearm is 'consistent with the Nation's historical tradition of firearm regulation.'" *Id.* (quoting *Bruen*, 597 U.S. at 24). "To satisfy this burden, the government must 'identify a well-established and representative historical *analogue*, not a historical *twin*." *Id.* (quoting *Bruen*, 597 U.S. at 30). "Evidence must be 'relevantly similar' to the challenged law." *Id.* (quoting *Bruen*, 597 U.S. at 29). "In assessing similarity," the Court "consider[s] 'whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified.'" *Id.* (quoting *Bruen*, 597 U.S. at 29).

Wilson's pertinent criminal history includes possessing a firearm by a felon, possessing heroin, illegally possessing stolen firearms, and possessing heroin with the intent to distribute it.[21] So, to survive Wilson's as-applied challenge, the government must show "that the Nation has a longstanding tradition of disarming someone with a criminal history analogous to this." *Diaz*, 2024 WL 4223684, at *5.

---

[21] ECF No. 100 at 2–3.

The government has carried its burden under *Bruen* to show "that the Nation has a longstanding tradition of disarming someone with a criminal history" analogous to Wilson's. *Id.* To carry that burden, the government relies principally on Founding-era laws criminalizing possessing and trafficking contraband.[22] And the government has shown that one or more of Wilson's predicate convictions are sufficiently analogous to the cited Founding-era laws imposing severe punishments for possessing or trafficking contraband. Among other "relevantly similar" examples, *Diaz*, 2024 WL 4223684, at \*7, the government explains that Virginia authorized imposition of the death penalty for the crime of knowing receipt of a stolen horse,[23] that the Second Congress authorized imposition of the death penalty for the crime of theft of the mail,[24] and that States and the federal government authorized imposition of the death penalty for the counterfeiting and forgery of public securities.[25] If capital punishment was permissible to respond to possessing and/or trafficking contraband, "then the lesser restriction of permanent disarmament that § 922(g)(1) imposes is also permissible." *Id.* at \*7. Accordingly, the Founding-era laws cited by the government qualify as "relevantly similar" evidence that "establish[es] that our

---

[22] ECF No. 89 at 6–11.

[23] *Id.* at 7 (citing 6 William Waller Hening, *The Statutes at Large; Being a Collection of All the Laws of Virginia from the First Session of the Legislature, in the Year 1619*, 130 (1819)).

[24] *Id.* (citing *An Act to Establish the Post-Office and Post Roads within the United States*, § 17 1 Stat. 232, 237 (1792)).

[25] *Id.* (citing *An Act for the Punishment of Certain Crimes Against the United States*, §§ 115, 1 Stat. 112, 115 (1790); 2 *Laws of the State of New York Passed at the Sessions of the Legislature* (1785-1788) 260-61 (1886); 9 William Waller Hening, *Statutes at Large; Being a Collection of All the Laws of Virginia, from the First Session of the Legislature* 302 (1821)).

country has a historical tradition of severely punishing people like [Wilson] who have been convicted" of possessing and trafficking contraband. *Id.* at *6, 7.

That the government has not cited Founding-era laws prohibiting drug-trafficking, specifically, is not dispositive. "[T]he Second Amendment permits more than just those regulations identical to ones that could be found in 1791." *Rahimi*, 144 S. Ct. at 1897–98. The government need not identify a "historical *twin*"; it need only identify a "historical *analogue*." *Bruen*, 597 U.S. at 30. It has done so.

Permanently disarming Wilson is also merited based on the Nation's longstanding tradition of disarming those convicted of serious crimes indicating that they may pose a risk of violence or other danger to public safety. "From the earliest days of the common law, firearm regulations have included provisions barring people from misusing weapons to harm or menace others." *Rahimi*, 144 S. Ct. at 1899. Among those provisions are the so-called "going armed" laws that targeted conduct "disrupt[ing] the public order . . . and le[ading] almost necessarily to actual violence." *Id.* (internal quotation marks, citation, and alterations omitted).

Here, Wilson's predicate felony drug-and-gun convictions reveal that Wilson may pose a comparable risk of violence or other danger to public safety. Congress has long recognized "that drugs and guns are a dangerous combination." *Smith v. United States*, 508 U.S. 223, 240 (1993) (citing statistics on the percentage of murders relating to the drug trade). And federal appellate courts have acknowledged that "drug dealing is notoriously linked to violence." *United States v. Torres–Rosario*, 658

11

F.3d 110, 113 (1st Cir. 2011) (citations omitted); *see also, e.g.*, *United States v. Barton*, 633 F.3d 168, 174 (3d Cir. 2011) ("[O]ffenses relating to drug trafficking and receiving stolen weapons are closely related to violent crime."); *United States v. Diaz*, 864 F.2d 544, 549 (7th Cir. 1988) ("[T]he illegal drug industry is, to put it mildly, a dangerous, violent business."). Accordingly, permanently disarming those, like Wilson, who have committed serious drug-and-gun felonies associated with violence is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24.

Finally, for good measure, courts across the country have held Section 922(g)(1) constitutional as applied to defendants with predicate convictions resembling one or more of Wilson's predicate convictions. *See, e.g.*, *United States v. Jackson*, 110 F.4th 1120, 1125–29 (8th Cir. 2024) (holding Section 922(g)(1) constitutional as applied to a defendant with predicate drug offenses); *United States v. Canales*, 702 F. Supp. 3d 322, 327–32 (E.D. Pa. 2023) (holding Section 922(g)(1) constitutional as applied to a defendant with predicate drug convictions); *United States v. Goins*, 647 F. Supp. 3d 538, 554–55 (E.D. Ky. 2022) (holding Section 922(g)(1) constitutional as applied to a defendant with predicate convictions for DUI and drug possession); *United States v. Pearson*, No. 22-CR-271, 2023 WL 6216527, at *3 (E.D. Pa. Sept. 25, 2023) (holding Section 922(g)(1) constitutional as applied to defendant with predicate drug-distribution and firearm convictions); *United States v. Blackshear*, No. 23-CR-159, 2023 WL 5985284, at *3 (E.D. Pa. Sept. 14, 2023) (same); *United States v. Reichenbach*, No. 4:22-CR-57, 2023 WL 5916467, at *8–10 (M.D. Pa. Sept. 11, 2023)

(holding Section 922(g)(1) constitutional as applied to defendant with predicate drug convictions); *United States v. Wise*, No. 21-CR-511, 2023 WL 6260038, at *4–7 (W.D. Pa. Sept. 26, 2023) (finding Section 922(g)(1) constitutional as applied to defendant with one predicate drug-trafficking conviction). Many of those courts reason, as the Court has here, that "guns and drugs" are "a dangerous combination increasing the risk of violence addressed by Congress in dispossessing significant long-time drug dealers of firearms." *Pearson*, 2023 WL 6216527, at *3 (internal citation and quotation marks omitted); *see also, e.g.*, *Reichenbach*, 2023 WL 5916467, at *9 ("There are few crimes that pose a greater risk to the public than drug trafficking, and fewer still where the dangerous connection between the crime and possession of firearms is more present or better understood."); *Canales*, 702 F. Supp. 3d at 321 ("[D]isarming individuals  . . . who have shown a proclivity toward drug trafficking[ ] serves the same purpose of protecting the public from unnecessary violence.").

*       *       *

In sum, Wilson's as-applied challenge fails because the government has met its burden to show that applying Section 922(g)(1) to Wilson "is consistent with this Nation's historical tradition of firearm regulation." *Diaz*, 2024 WL 4223684, at *9.

IV.   **CONCLUSION**

Accordingly,

**IT IS ORDERED** that Wilson's motion[26] to dismiss is **DENIED**.

New Orleans, Louisiana, this 6th day of October, 2024.

BRANDON S. LONG
UNITED STATES DISTRICT JUDGE

---

[26] ECF No. 87.

14